# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE:                                    :
                                          :
ORRIN S. ANDERSON,                        :     S.D.N.Y. Bankr. No. 14-22147 (RDD)
                                          :
        Debtor.                   :
                                          :
                                          :
                                          :
ORRIN S. ANDERSON, A/K/A ORRIN            :     S.D.N.Y. Bankr. Adv. Pro. No. 15-
ANDERSON, A/K/A ORRIN SCOTT               :     08342 (RDD)
ANDERSON,                                 :
                                          :
        Plaintiff,                :     S.D.N.Y. No. 19-cv-3981
                                          :
        v.                        :
                                          :
CAPITAL ONE BANK (USA), N.A.,             :
                                          :
        Defendant.                :

# MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR FINAL APPROVAL

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................ii-iii

PRELIMINARY STATEMENT ................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.................................................4

I.      The Terms of the Proposed Settlement...........................................................6

II.     Notice to the Class. ........................................................................................8

ARGUMENT ...........................................................................................................9

I.      The Court Should Grant Final Approval of the Proposed Settlement. ..............9

        A.      Legal Standard. ...............................................................................9

        B.      The Settlement Meets the Standard for Final Approval. .......................11

                1.      The Settlement is Procedurally Fair...........................................11

                2.      The Settlement is Substantively Fair, as Application of the *Grinnell*
                        Factors Shows. ......................................................................13

                        i.      The Complexity, Expense, and Likely Duration of Litigation. ......13

                        ii.     The Reaction of the Class to Settlement. ......................................14

                        iii.    The Stage of the Proceedings and the Amount of Discovery
                                Completed. .................................................................................14

                        iv.     The Risks of Establishing Liability and Damages.........................15

                        v.      The Risk of Maintaining Class Action Status Through Trial. .......15

                        vi.     The Ability of the Defendant to Withstand a Greater Judgment. ..16

                        vii.    The Range of Reasonableness of the Settlement Fund.................16

        C.      The Notice Satisfies Due Process and Rule 23....................................17

        D.      The Court Should Certify the Class for Settlement. .............................19

CONCLUSION.......................................................................................................20

# **TABLE OF AUTHORITIES**

Cases

*Banyai v. Mazur*,
   2007 WL 927583 (S.D.N.Y. Mar. 27, 2007) ......................................................... 15

*Bodon v. Domino's Pizza, LLC*,
   2015 WL 588656 (E.D.N.Y. Jan. 16, 2015) ......................................................... 16

*Charron v. Wiener*,
   731 F.3d 241 (2d Cir. 2013) ............................................................................... 9

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ............................................................. 10, 13, 16, 17

*Clark v. Ecolab, Inc.*,
   2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ..................................................... 11

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ......................................................................... 9, 11, 12

*Hadel v. Gaucho, LLC*,
   2016 WL 1060324 (S.D.N.Y Mar. 14, 2016) ..................................................... 10

*Handschu v. Special Servs. Div.*,
   787 F.2d 828 (2d Cir. 1986) ............................................................................... 18

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................... 16

*In re Med. X-Ray Film Antitrust Litig.*,
   1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ......................................................... 16

*In re NASDAQ Mkt. Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ....................................................................... 11

*In re Sinus Busters Products Consumer Litig.*,
   2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ..................................................... 16

*Manley v. Midan Rest. Inc.*,
   2016 WL 1274577 (S.D.N.Y. Mar. 30, 2016) ..................................................... 15

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1998) ............................................................................... 10

ii

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009) ...................................................................................... 9, 10, 11, 13

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) ...................................................................................... 13

*Snapp v. The Topps Co., Inc.*,
  1997 WL 1068687 (E.D.N.Y. Feb. 12, 1997) ...................................................................... 14

*Tiro v. Pub. House Investments, LLC*,
  2013 WL 2254551 (S.D.N.Y. May 22, 2013) ...................................................................... 12

*Viafara v. MCIZ Corp.*,
  2014 WL 1777438 (S.D.N.Y. May 1, 2014) ........................................................................ 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) .......................................................................................... 10, 14, 17-18

*Willix v. Healthfirst, Inc.*,
  2011 WL 754862 (E.D.N.Y Feb. 18, 2011) ........................................................................ 15

*Zeltser v. Merrill Lynch & Co.*,
  2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ................................................................ 14-15

Statutes

Section 524 of the Bankruptcy Code (11 U.S.C. § 524) ...................................................... 1, 4

Rules

Fed. R. Civ. P. 23 ...................................................................................................... p*assim*

Fed. R. Civ. P. 30(b)(6) ...................................................................................................... 5, 12

Plaintiff Orrin Anderson ("Plaintiff"), on behalf of himself and all others similarly situated, respectfully submits this memorandum of law in support of Plaintiff's unopposed motion for final approval of the parties' settlement of this class action suit ("Motion").

## PRELIMINARY STATEMENT

In this class action, Plaintiff has alleged that Capital One Bank (USA), N.A. ("Capital One" or "Defendant") violated the discharge injunction found in Section 524 of the Bankruptcy Code by declining, as a policy, to update the credit furnishing on certain consumer debts that were sold to third parties to reflect that those debts were discharged in bankruptcy after such sales. Defendant denies the allegations in the Amended Complaint and denies that its conduct violated the discharge injunction.

The Parties have agreed to enter into a Settlement Agreement to resolve this case.[1] If approved, the Settlement would resolve the claims against Defendant in this action. The Settlement Agreement was negotiated at arm's length by experienced and knowledgeable counsel, with the assistance of an experienced mediator, following significant discovery, and it is a fair, reasonable and adequate settlement. For these reasons, final approval is warranted.[2]

Pursuant to the Settlement Agreement, as described further below, Defendant has agreed to fund a $10.5 million Settlement Fund, subject to Court approval. Based on its records, Capital One has identified over six hundred ninety five thousand Class Members. Prior to entering into the Settlement, Capital One created a Refund Program to reimburse consumers for payments

---

[1] Unless otherwise defined, all capitalized terms have the same meaning as set forth in the Settlement Agreement.

[2] The Parties have agreed upon a form Proposed Final Approval Order, which is Exhibit 4 to the Settlement Agreement previously filed.

submitted to Capital One on Affected Accounts post-discharge.  To date, through this Refund Program, Capital One has reimbursed three hundred and eighty-six (386) Class Members in the aggregate amount of $210,092.04 for payments submitted to Capital One on Affected Accounts post-discharge.  Under the terms of the Settlement Agreement, these payments are credited against the Settlement Fund.  Additionally, those Class Members who submitted payments to Capital One on an Affected Account post-discharge and have not been compensated fully for those payments through the Refund Program may submit a claim for reimbursement.  The remaining settlement monies will be distributed to the Class on a claims-made basis.

Based on the aggregate amount of the reimbursement payments made to date and the reimbursement and distribution claims submitted to date, it is estimated that the distribution claim payments will likely be over $500 per Class Member, depending on the number of additional reimbursement claims and distribution claims that are verified.  Thus, the distribution payments in this action will be comparable to those in two other substantively identical actions recently settled in this district, *Haynes v. Chase Bank USA, N.A. (In re Haynes)*, No. 18-cv-03307-VB, and *Echevarria v. Bank of America Corp., et al. (In re Echevarria),* No. 7:17-cv-08026-VB.  Any residual monies will be distributed through a *cy pres* program.  Notably, no settlement monies will revert to Capital One.

As a part of the Agreement, Capital One also represents and warrants that since December 2015, it has asked the Credit Reporting Agencies to delete Tradelines of sold debt, including for the Affected Accounts it had identified at that time, and has confirmed that these deletions have been regularly occurring.  Capital One further represents and warrants that, absent specified exceptions (*e.g.*, a Class Member's request), it will not request that the Credit Reporting Agencies reinstate those Tradelines.  In addition, Capital One represents and warrants that, absent any change

2

in federal or state law or contrary direction or expectation from any government regulator, during the period set forth in the Agreement, Capital One will, after the sale of charged off debt relating to a Credit Card Account, request that the Credit Reporting Agencies delete or suppress the Capital One Tradeline for that account after information about the sale is furnished.

As such, the Settlement offers substantial relief to the Settlement Class, as well as future consumers, while also taking into account the substantial risks inherent in proceeding with litigation of this nature.

In addition, this Settlement is comparable to the settlements this district court recently approved in *Haynes*, Dkt. 19, and *Echevarria*, Dkt. 23.  In *Haynes*, where there were over one million class members, Chase agreed to fund an $11.5 million settlement fund and pay Class Counsel up to $3.75 million in fees and expenses.  *Haynes*, Dkt. 9-1.  In *Echevarria*, where there were over 400,000 class members, Bank of America agreed to fund a $5.5 million settlement fund and pay Class Counsel up to $1 million in fees and expenses.  *Echevarria* at Dkt. 12-1.  Class Counsel exercised the right to seek approval for up to an additional $500,000 in fees and expenses, to be paid from the settlement fund.  *Id*. at Dkt. 14-16.  Chase and Bank of America also agreed to substantially identical representations and warranties to those Capital One agrees to here.  *Id*. at *Haynes*, Dkt. 9-1; *Echevarria*, Dkt. 12-1.

For all of these reasons, and as further described below, Plaintiff respectfully requests that this Court grant final approval of the Settlement.  *See* Fed. R. Civ. P. 23(e).  ***Further, Plaintiff respectfully requests that the Court grant final approval at the hearing scheduled for September 11, 2019, so that the Class may receive the benefit of the Settlement as soon as possible.***

## FACTUAL AND PROCEDURAL BACKGROUND

In the Amended Complaint, Plaintiff alleges that Capital One had a policy of declining to update its credit furnishing on sold credit-card debt subsequently discharged in a Chapter 7 bankruptcy.  Plaintiff alleges that Capital One's failure to update its credit furnishing to reflect Chapter 7 bankruptcy discharges pressured consumers to repay discharged debt in order to have the negative information removed from his or her credit report.  Am. Compl. ¶¶ 7-14.  Plaintiff alleges that Capital One's systematic refusal to update its credit furnishing violated the discharge injunction set forth in § 524 of the Bankruptcy Code.  Capital One denies these allegations and denies that its conduct violated the discharge injunction.  The Settlement Agreement that Plaintiff now submits for final approval provides excellent relief to the Settlement Class concerning these claims, following several years of vigorously contested litigation.

On January 31, 2014, Plaintiff Orrin Anderson filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of New York.  *In re Orrin S. Anderson*, No. 14-22147 (RDD).  The Bankruptcy Court entered a discharge order on May 6, 2014.  On or about June 9, 2015, Mr. Anderson moved to reopen his bankruptcy for the purpose of challenging Capital One's conduct, and the Bankruptcy Court granted his motion on July 6, 2015.

On July 31, 2015, Plaintiff Orrin Anderson, individually and on behalf of all others similarly situated, filed a complaint against Capital One Bank, N.A. in the Bankruptcy Court (the "Complaint").  *Anderson v. Capital One Bank, N.A.,* Adv. Proc. No. 15-08342 (RDD), Dkt. No. 1.  The parties subsequently engaged in extensive motion practice.

On September 18, 2015, Capital One moved to dismiss the Complaint and simultaneously moved to transfer the case.  Dkt. Nos. 8, 12.  Following full briefing and oral argument, the Bankruptcy Court denied the motions.  *See* Dkt. No. 42.  Plaintiff filed its Amended Complaint on

April 1, 2016 and Capital One answered on April 15, 2016. Capital One again moved to dismiss, this time the Amended Complaint, on August 1, 2018. The parties settled before a decision on the motion, which was fully briefed.

In the course of the litigation, the parties served significant written discovery, including requests for production of documents, interrogatories, and requests for admission. *See* Declaration of Adam R. Shaw in Support of Motion for Final Approval of Settlement ("Shaw Decl.") at ¶ 4. In response to requests for production served by Class Counsel, Capital One made ten document productions, totaling just under 300,000 pages of documents, which Class Counsel analyzed and utilized in the course of the litigation. *Id*. Class Counsel also deposed two corporate representatives of Capital One pursuant to Fed. R. Civ. P. 30(b)(6). *Id*. In addition, Class Counsel have issued third party subpoenas in the course of the litigation. *Id*.

Moreover, the parties engaged in serious and informed negotiations in an effort to reach an equitable resolution of the litigation. The parties had numerous settlement discussions and mediated the dispute with an experienced and well-respected mediator from Pilgrim Mediation Group, Jonathan Lerner. *Id*. at ¶ 6.

Based upon their discovery, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, and after engaging in extensive arm's length negotiations, the parties reached agreement on the Settlement. The Settlement Agreement both provides significant benefits to Class Members and takes into account the substantial risks inherent in proceeding with litigation of this nature. Plaintiff had two objectives in filing this action – to remedy the alleged violation of the discharge injunction by having Capital One update its credit furnishing and to compensate putative Class Members who were harmed by Capital One's actions. As described further below, the Settlement Agreement achieves both objectives and further safeguards the credit

reports of future consumers.  Capital One has addressed the credit furnishing with respect to Class Members' Affected Accounts and, under the terms of the Settlement, if Capital One sells debt, it has represented and warranted that it will address Tradelines related to those sales as set forth in the Settlement Agreement.  Moreover, the Settlement provides reimbursement to Class Members who made post-discharge payments on their sold Capital One debts, and further allows Settlement Class Members to make claims from a $10.5 million Settlement Fund.

**I.      The Terms of the Proposed Settlement.**

Under the Settlement Agreement, the Class is defined as the collective group of those individuals (i) who maintained a Credit Card Account with Capital One; (ii) whose account Capital One charged off and then sold to a Debt Buyer on or after January 1, 2008; and (iii) who post-sale sought and obtained a discharge of the debt as a result of his/her bankruptcy under Chapter 7 of the Bankruptcy Code, through and including March 22, 2016.  Agreement, § 1.14.  Based on its records, Capital One has identified over six hundred ninety five thousand Class Members. Declaration of Sydney Gustafson in Support of Final Settlement Approval ("Gustafson Decl.") at ¶ 11.

**A.  Monetary Relief.**

The Settlement Agreement provides significant relief to the Class.  With respect to monetary relief, the Settlement Agreement provides that Capital One will fund a qualified Settlement Fund of $10.5 million.  Prior to entering into the Settlement, Capital One created a Refund Program to reimburse consumers for payments submitted to Capital One on Affected Accounts post-discharge.  To date, through this Refund Program, Capital One has reimbursed three hundred and eighty-six (386) Class Members in the aggregate amount of $210,092.04 for payments submitted to Capital One on Affected Accounts post-discharge.  Under the terms of the Settlement

Agreement, these payments are credited against the Settlement Fund.  Additionally, those Class Members who submitted payments to Capital One on an Affected Account post-discharge and have not been compensated fully for those payments through the Refund Program may submit a claim for reimbursement.  Agreement, § 5.2.2.  The remaining funds in the Settlement Fund shall be disbursed primarily to Participating Claimants who submit a Qualifying Claim Form, as described more fully in the Agreement.  *Id*. at § 5.2.3.  The Class Representative may also apply to receive, subject to court approval, an Incentive Award of up to $5,000 from the Settlement Fund. *Id*. at § 15.6.  Any residual monies will be distributed through a *cy pres* program.  *Id*. at § 5.5. There shall be no reverter of any part of the Settlement Fund to Capital One after the Effective Date. *Id*. at § 3.3.1.

### B.  Non-Monetary Relief

In addition, as a direct result of the Action, Capital One has requested that the Credit Reporting Agencies delete the Tradelines associated with Class Members' Affected Accounts.  *Id*. at § 3.2.1.  Capital One further represents and warrants as a part of the Settlement that, absent specified exceptions (*e.g.*, a Class Member's request), Capital One will not ask the Credit Reporting Agencies to reinstate these Tradelines.  *Id*. at §§ 3.2.2-3.2.3.  Capital One also represents and warrants that, absent any change in federal or state law or contrary direction or expectation from any  government regulator, during the period set forth in the Agreement Capital One will, after the sale of charged off debt relating to a Credit Card Account, request that the Credit Reporting Agencies delete or suppress the Capital One Tradeline for that account after information about the sale is furnished.  *Id*. at § 3.2.5.[3]  Thus, the Settlement addresses the core complaint of Plaintiff and the Class and provides relief to them and to future consumers.

---

[3] Section 3.2.6 in the Settlement Agreement addresses Capital One's obligations under the

### C.  Settlement Administration Costs and Attorneys' Fees and Expenses.

Under the Agreement, costs including those associated with Notice, Claims, and the administration of the Settlement shall be invoiced by the Settlement Administrator and paid from the Settlement Fund.  § 3.3.2.  The Settlement Administrator has now detailed the approximate cost to date to implement the Notice Plan and handle the administration of claims and Settlement Class Member support for this Settlement Program, which totals $555,119.  Gustafson Decl. at ¶ 22.  In addition, under the Agreement, Class Counsel may seek preliminary approval from the Bankruptcy Court and final approval from the District Court for an award of Attorneys' Fees and Expenses in the Action, which shall be paid from the Settlement Fund.  *Id*. at § 15.  Simultaneously with this motion, Class Counsel seeks an award of fees and expenses totaling $3,500,000.

## II.      Notice to the Class.

As provided in the Settlement Agreement, Brown Greer LLC is serving as the Settlement Administrator.  Agreement, §§ 1.35, 1.53; *see also id*., Exh. 1a; Gustafson Decl.  Capital One confidentially provided a list of all Class Members known to Capital One to the Settlement Administrator, and the Settlement Administrator provided Mail Notice directly to all Class Members.  *Id*. at §§ 6.3, 7.2; Gustafson Decl. at ¶¶ 10-11, 14.  As also provided in the Settlement Agreement, the Mail Notice was mailed to Class Members on a timely basis, *i.e.*, within forty-five days after the Bankruptcy Court's approval of the Mail Notice.  *Id*. at § 1.36; Gustafson Decl. at ¶¶ 12, 14.  In addition, though not required by the Settlement Agreement, with the approval of Class and Defense Counsel, the Settlement Administrator performed additional address curing research for those Notices returned as undeliverable without a forwarding address and mailed Second Effort Notices to those Class Members for whom an updated address was located.

---

Agreement if federal or state law should change to require it to furnish on such debt.  *Id*.

Gustafson Decl. at ¶¶ 15-16.  In addition, the Settlement Administrator established a Settlement Website, which contains the Settlement Agreement, Notice and Claims Forms.  *Id*. at § 7.6; Gustafson Decl. at ¶ 8.  Class Members have submitted Claim Forms both through the Settlement Website and via mail.  Gustafson Decl. at ¶ 19.

## ARGUMENT

**I.      The Court Should Grant Final Approval of the Proposed Settlement.**

Class Counsel have worked diligently to reach a fair, reasonable, and adequate settlement. Plaintiff and Class Counsel believe the claims the Settlement resolves are meritorious.  They recognize, however, that there is significant risk and expense associated with continuing to prosecute these claims through trial and any potential appeals.  In negotiating and evaluating the Settlement, Plaintiff and Class Counsel have taken these costs and uncertainties into account, as well as the delays inherent in complex class action litigation.  Indeed, this action has already been pending for more than four years.  In light of the foregoing considerations, Class Counsel believe the proposed Settlement provides an excellent outcome and is thus in the best interests of Class Members.

**A.      Legal Standard.**

Rule 23(e) requires court approval of any settlement of claims brought on a class basis.  "A court may approve a class action settlement only after . . . finding that [the settlement] is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In order to determine whether a settlement is "fair, reasonable, and adequate," a court must assess whether the settlement is both procedurally and substantively fair.  *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

As the Second Circuit has recognized, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *McReynolds*, 588 F.3d at 803 (internal quotation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."); *Hadel v. Gaucho, LLC*, No. 15 Civ. 3706, 2016 WL 1060324, at *2 (S.D.N.Y Mar. 14, 2016) ("Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere.").

Consistent with the strong judicial policy in favor of settlement, in assessing whether a settlement is procedurally fair, courts apply a "presumption of fairness, reasonableness and adequacy as to the settlement where a class settlement is reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds*, 588 F.3d at 803 (internal quotation omitted). In assessing whether a settlement is substantively fair, courts in this Circuit use the nine factor-test set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). These factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.*

The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). "In

exercising this discretion, courts should give proper deference to the private consensual decision of the parties." *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks omitted). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ." *Id.* (internal quotation marks omitted).  The Second Circuit will only disturb a judicially-approved class action settlement when there is a clear showing that the district court abused its discretion. *McReynolds*, 588 F.3d at 803.

### B.   The Settlement Meets the Standard for Final Approval.

The proposed Settlement is both procedurally and substantively fair.  The Bankruptcy Court has already "preliminarily approve[d] . . . the Settlement . . . as fair, reasonable, and adequate" and found on a preliminary basis that "the Settlement . . . falls within the range of reasonableness and was the product of informed, good-faith, arms'-length negotiations between the Parties and their counsel, and therefore meets the requirements for preliminary approval." *Anderson v. Capital One Bank (USA), N.A.,* Adv. Proc. No. 15-08342 (RDD), Dkt. No. 95 at 4. Likewise, the proposed Settlement meets all of the requirements for final approval.

### 1.   The Settlement is Procedurally Fair.

In order to demonstrate a settlement's procedural fairness, a party must show that "the settlement resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *D'Amato*, 236 F.3d at 85 (internal quotation omitted).  When counsel for the parties engage in diligent arm's length negotiations, a settlement is generally entitled to a presumption of fairness.  *See In re NASDAQ Mkt. Makers Antitrust Litig*., 187 F.R.D. 465, 474 (S.D.N.Y. 1998).  The participation of a highly qualified mediator in settlement negotiations

strongly supports a finding that negotiations were conducted at arm's length and without collusion. *D'Amato*, 236 F.3d at 85 ("[A] court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *Tiro v. Pub. House Investments, LLC*, No. 11 Civ. 7679 CM, 2013 WL 2254551, at *2 (S.D.N.Y. May 22, 2013) ("The assistance of an experienced JAMS employment mediator . . . reinforces that the Settlement Agreement is non-collusive.").

Here, the Settlement is the product of vigorous, arm's length negotiations by informed and experienced counsel, following the necessary discovery. With respect to discovery, Class Counsel conducted a thorough pre-suit investigation and evaluation of the relevant claims and defenses. Shaw Decl. at ¶ 4. Moreover, they have briefed a number of contested issues to the Bankruptcy Court, and conducted significant discovery in the course of the litigation, including serving requests for production and interrogatories on Capital One. *Id.* In response to Plaintiff's document requests, Capital One produced just under 300,000 pages of documents, which Class Counsel have analyzed. *Id.* Class Counsel have also deposed two corporate representatives of Capital One pursuant to Fed. R. Civ. P. 30(b)(6), and sought third party discovery. *Id.* By engaging in significant discovery and the litigation of these claims in the Bankruptcy Court, Class Counsel has obtained the necessary understanding of the strengths and weaknesses of Plaintiff's claims. Moreover, Class Counsel's substantial work in the five other cases pending in bankruptcy court in this district, in which there was substantial discovery, motion practice and appeals over several years, has also informed their understanding of the strengths and weaknesses of Plaintiff's claims.

With respect to the negotiation of the Settlement, both Plaintiff and the Settlement Class and Capital One are represented by experienced and knowledgeable counsel. In particular, Class Counsel has experience in both complex class action litigation and bankruptcy law. The

Settlement was reached after the parties engaged in extensive negotiations over a period of months. These negotiations included face-to-face sessions as well as numerous telephone and email discussions. Moreover, the parties' face-to-face negotiations took place during mediation sessions with, as well as follow-up communications through, an experienced and highly regarded mediator. *Id*. at ¶ 6. In all respects, the negotiations were thorough and hard fought, and free from any undue pressure or collusion.

As such, the Settlement is procedurally fair and is entitled to a "presumption of fairness, reasonableness and adequacy." *McReynolds*, 588 F.3d at 803.

### 2.   The Settlement is Substantively Fair, as Application of the *Grinnell* Factors Shows.

In order to demonstrate a settlement's substantive fairness for final approval, a party must demonstrate that the factors set forth by the Second Circuit in *City of Detroit v. Grinnell Corp.* 495 F.2d 448, 463 (2d Cir. 1974), are satisfied. Here, these factors overwhelmingly favor final approval of the Settlement.

#### i.   The Complexity, Expense, and Likely Duration of Litigation.

First, the complex, expensive and time-consuming nature of this litigation weighs heavily in favor of settlement. *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) ("The greater the complexity, expense and likely duration of the litigation, the stronger the basis for approving a settlement.") (internal quotation omitted). The procedural history outlined above demonstrates that this litigation is, by its nature, complex. Moreover, it has already gone on for more than four years, at significant expense to the parties. If the Settlement is not approved, further litigation would resume, which would be yet more costly, complex and time-consuming. This litigation would likely include class certification proceedings, further fact discovery, including depositions, interrogatories and requests for admission, and more voluminous document

discovery, expert discovery, dispositive motion practice and trial.  In addition, post-judgment appeals are also possible.  This litigation would be costly and time-consuming and would require significant judicial oversight.

### ii.     The Reaction of the Class to Settlement.

The reaction of the Class to the Settlement has been overwhelmingly positive, as demonstrated by the exceedingly low number of objections received to date.  As of this date, out of over six hundred ninety five thousand Class Members, no class members have filed an objection with the Court[4].  The exceedingly small number of objections from such a large settlement class indicates that the proposed settlement is fair.  *See Snapp v. The Topps Co., Inc.*, No. 93 Civ. 0347, 1997 WL 1068687, at *2 (E.D.N.Y. Feb. 12, 1997) ("The dearth of objections carries considerable weight in the determination of fairness."); *see also Wal-Mart*, 396 F.3d at 118-19.  Moreover, the single objection does not raise a substantive objection to the Settlement.  In addition, only 34 Class Members have requested to opt out.  Gustafson Decl. at ¶ 21.

### iii.    The Stage of the Proceedings and the Amount of Discovery Completed.

This factor also weighs heavily in favor of settlement, given that the action has been pending for more than four years and Class Counsel have taken a significant amount of discovery during that time period, as described above.  As a result of the discovery taken to date and as a result of discovery taken in related cases pending in the Southern District Bankruptcy Court, Class Counsel have gained sufficient insight into the facts and legal issues associated with the case to make the necessary judgments concerning settlement.  *See Zeltser v. Merrill Lynch & Co.*, No. 13

---

[4] Class Counsel understands that no objections have been submitted to the Settlement Administrator either.  Gustafson Decl. at ¶ 21. Pursuant to the terms of the Settlement Agreement, objections are to be filed with the Court.  Agreement, § 12.

Civ. 1531 FM, 2014 WL 4816134, at *6 (S.D.N.Y. Sept. 23, 2014) ("Here, through both formal discovery and an informal exchange of information prior to mediation, Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses or their claims and to accurately estimate damages at issue."). In short, "discovery has advanced sufficiently to allow the parties to resolve the case responsibly." *Manley v. Midan Rest. Inc.*, No. 14 Civ. 1693 (HBP), 2016 WL 1274577, at *9 (S.D.N.Y. Mar. 30, 2016).

### iv.       The Risks of Establishing Liability and Damages.

As with any litigation, this action inherently involves risks. Thus, this factor weighs in favor of settlement, as well. Capital One continues to deny liability and, absent settlement, it would no doubt continue to vigorously oppose Plaintiff's claims, as it has done every step of the way to date. As such, continued litigation presents the likelihood of significantly increased costs, with no guarantee for recovery, let alone a recovery greater than that which the Settlement provides. *See, e.g., Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y Feb. 18, 2011) ("Litigation inherently involves risks.") (citation omitted); *Banyai v. Mazur*, No. 00 Civ. 9806 SHS, 2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007) ("[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."); *Zeltser*, 2014 WL 4816134, at *6.

### v.       The Risk of Maintaining Class Action Status Through Trial.

This factor also weighs in favor of settlement, as Capital One would no doubt vigorously oppose class certification. At the motion to dismiss stage in several related actions, the defendants moved to strike the class allegations, arguing, among other things, that the bankruptcy court lacked jurisdiction over a nationwide class action of this type. *See, e.g., Haynes v. Chase Bank USA, N.A.*, Adv. Proc. No. 13-08370 (RDD), Dkt. No. 63 at 10-14. While the Bankruptcy Court denied

these motions to strike the class allegations, Capital One would no doubt raise similar challenges at the class certification stage and potentially pursue appeals concerning class certification. Moreover, certified classes are subject to modification based on further developments in the litigation.  As such, additional challenges to proceeding on a class-wide basis present a risk to the class and its potential recovery.  *See, e.g., In re Med. X-Ray Film Antitrust Litig.*, No. 93 Civ. 5904, 1998 WL 661515, at *5 (E.D.N.Y. Aug. 7, 1998); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (stating that a settlement that is reached prior to the risks of class certification, summary judgment, and trial, is evaluated more leniently in light of the risks it avoids).

### vi.      The Ability of the Defendant to Withstand a Greater Judgment.

This factor is neutral.  While Capital One would likely be able to withstand a greater judgment, where, as here, the other *Grinnell* factors weigh in favor of settlement, this one factor does not weigh against settlement.  *See, e.g., In re Sinus Busters Prods. Consumer Litig.*, No. 12 Civ. 2429, 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) ("Courts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement.") (citations omitted); *Viafara v. MCIZ Corp.*, No. 12 Civ. 7452, 2014 WL 1777438, at *7 (S.D.N.Y. May 1, 2014) (A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair") (citation omitted).

### vii.      The Range of Reasonableness of the Settlement Fund.

*Grinnell* directs that the court view the range of reasonableness of the settlement fund in light of (i) the best possible recovery and (ii) all the attendant risks of litigation.  *See, e.g., Bodon v. Domino's Pizza, LLC*, No. 09 Civ. 2941, 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015)

16

("[T]he question for the Court is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces[.]") (citation omitted).  These factors also weigh heavily in favor of settlement.

Here, Plaintiff alleges that Capital One violated the discharge injunction of the Bankruptcy Code by declining to update its credit furnishing on Class Members' Affected Accounts to remove the "charged off" or other derogatory notation and instead furnish that debt as "Included in Bankruptcy."  As a result of this litigation and as a part of the Settlement, Capital One has requested deletion of the Tradelines associated with Class Members' Affected Accounts and will address any future issues in the manner described above (*see supra* pp. 6-7).  This relief provides an excellent outcome for both the Class and for future consumers.  Moreover, Class Members are entitled to make claims from a $10.5 million Settlement Fund.  In addition, Class Members whose debts Capital One sold and were later discharged in Chapter 7 bankruptcy, and who subsequently made payments on those debts to Capital One, either have already received payment through the Refund Program or are entitled to make a claim for reimbursement from the Settlement Fund.

Taking all of the above into account, Class Counsel have achieved the best possible recovery in light of the cost and risks of further litigation.

* * *

Thus, application of the *Grinnell* factors indicates that the Settlement is substantively fair. As such, Plaintiff respectfully requests that the Court grant final approval of the Settlement.

### C.    The Notice Satisfies Due Process and Rule 23.

Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  The notice procedures must be reasonable and comport with due process.  *Wal-Mart*, 396 F.3d at 113 ("The standard for

the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness.") (citations omitted); *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("[T]he district court has virtually complete discretion as to the manner of giving notice to class members.").

Rule 23(c)(2)(B) also provides that, for any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). It further provides that the notice must include: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id*.

Here, Notice to the Class was reasonable and comported with the requirements of the Federal Rules of Civil Procedure and due process. The Bankruptcy Court preliminarily approved the Settlement and the proposed Notice on April 25, 2019. *Anderson v. Capital One Bank (USA), N.A.,* Adv. Proc. No. 15-08342 (RDD), Dkt. No. 95. As described above, Notice was provided to the Class promptly after the entry of the Preliminary Approval Order. Here, Capital One's records and publicly available bankruptcy court records permitted identification of all Class Members known to Capital One, allowing Mail Notice to be sent directly to them. Agreement, § 7.2. The Settlement Administrator sent Mail Notice directly to Class Members within forty-five days after the Bankruptcy Court entered the Preliminary Approval Order. *Id*. at §§ 1.36; 7.3; Gustafson Decl. at ¶¶ 12, 14. The Settlement Agreement, Long Form Notice and Claim Forms are also available

on the Settlement Website.  *Id*. at §§ 7.3, 7.6; Gustafson Decl. at ¶ 8.  Thus, Mail Notice was provided to all Class Members in a timely fashion, giving them sufficient time to decide whether to participate in the Settlement, object or opt out.  *Id*. at §§ 1.40; 1.41; *see also generally* §§ 11, 12.  Thus, Notice in this action more than meets the reasonableness standard.

In addition, the Notice is sufficiently detailed, as required by Rule 23(c)(3).  The Long Form Notice, available on the Settlement Website, describes the nature of the Action, defines the Settlement Class, explains the Released Claims, as well as the monetary and other terms of the Settlement, and fully details the Settlement Class Members' rights.  *See* Agreement, Exh. 1b. It also indicates the time and place of the Final Approval Hearing, and the process for opting out of or objecting to the Settlement.  *Id*.  It also details the provisions for payment of Attorneys' Fees and Expenses and provides contact information for Class Counsel.  *Id*.

For these reasons, the Notice provided to the Class is not only reasonable but also the best Notice that is practicable under the circumstances.

### D.    The Court Should Certify the Class for Settlement.

Plaintiff asked the Bankruptcy Court to preliminarily certify the Class for settlement purposes, and it did so on April 25, 2019.  *Anderson v. Capital One Bank (USA), N.A.,* Adv. Proc. No. 15-08342 (RDD), Dkt. No. 95.  For the reasons identified in Plaintiff's Memorandum of Law in Support of Motion for Preliminary Approval (Dkt. No. 93-1), Plaintiff requests that the Court certify the Class.  Plaintiff also requests that the Court confirm the prior appointment of the Plaintiff Orrin S. Anderson as Class Representative, and the law firms of Boies Schiller Flexner LLP and Charles Juntikka & Associates LLP as Class Counsel.  *Id*.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the Settlement Agreement as set forth in Proposed Final Judgment and Order of Dismissal with Prejudice submitted by the parties.  *See* Settlement Agreement at Exh. 4.


Respectfully submitted,

Dated:  Albany, New York
        August 28, 2019

**BOIES SCHILLER FLEXNER LLP**

By:    */s/ Adam R. Shaw*
       George F. Carpinello
       Adam R. Shaw
       Anne M. Nardacci
       30 South Pearl Street
       Albany, NY  12207
       (518) 434-0600


**CHARLES JUNTIKKA & ASSOCIATES LLP**
Charles Juntikka
30 Vesey Street, #100
New York, NY  10007
(212) 315-3755

*Attorneys for Plaintiff Orrin S. Anderson*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2019, I caused the foregoing document to be filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/Adam R. Shaw*　　　　　
Adam R. Shaw
