**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| ORRIN S. ANDERSON, | : | S.D.N.Y. Bankr. No. 14-22147 (RDD) |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |
| | : | |
| ORRIN S. ANDERSON, A/K/A ORRIN ANDERSON, A/K/A ORRIN SCOTT ANDERSON, | : | S.D.N.Y. Bankr. Adv. Pro. No. 15-08342 (RDD) |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | S.D.N.Y. No. 19-cv-3981 (NSR) |
| v. | : | |
| | : | |
| CAPITAL ONE BANK (USA), N.A., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S UNCONTESTED MOTION FOR**
**ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARD PAYMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii-vi

PRELIMINARY STATEMENT ................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND................................................................4

I.    The Terms of the Proposed Settlement ................................................................6

      A.  Monetary Relief ................................................................................7

      B.  Non-Monetary Relief ................................................................................8

      C.  Settlement Administration Costs and Attorneys' Fees and Expenses ..........................8

ARGUMENT ................................................................................9

I.    The Requested Attorneys' Fees Are Reasonable and Appropriate..................................9

      A.    The Proposed Award to Class Counsel is Reasonable and Appropriate
            Under Both the Percentage and Lodestar Methods................................................11

      B.    The Proposed Award to Class Counsel is Reasonable Under the *Goldberger*
            Criteria ................................................................................15

            1.    The Time and Labor Expended By Class Counsel ....................................15

            2.    The Risks of the Litigation ................................................16

            3.    The Magnitude and Complexity of the Litigation ....................................18

            4.    The Requested Fee in Relation to the Settlement ....................................18

            5.    The Quality of the Representation ..........................................19

            6.    Public Policy Considerations ................................................20

II.   Class Counsel's Expenses Are Reasonable and Appropriate ............................................20

III.  The Proposed Incentive Award to the Class Representative is Reasonable and
      Appropriate ................................................................................21

CONCLUSION................................................................................22

## **TABLE OF AUTHORITIES**

Cases

*Arbor Hill Concerned Citizens Neighborhood Ass 'n v. County of Albany,*
    522 F.3d 182 (2d Cir. 2008)..............................................................................12, 14

*Banyai v. Mazur,*
    2007 WL 927583 (S.D.N.Y. Mar. 27, 2007) ..........................................................17

*Boeing Co. v. Van Gernert,*
    444 U.S. 472 (1980)....................................................................................................9

*Central States S.E. and S.W. Areas Health and Welfare Fund v. Merck–Medco
Managed Care, L.L.C.,*
    504 F.3d 229 (2d Cir. 2007)....................................................................................11

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)....................................................................................16

*City of Providence v. Aeropostale, Inc.,*
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) ..........................................................11

*Dornberger v. Metropolitan Life Ins. Co.,*
    203 F.R.D. 118 (S.D.N.Y. 2001) ............................................................................22

*Edmonds v. United States,*
    658 F. Supp. 1126 (D.S.C. 1987).............................................................................19

*Elliot v. Leatherstocking Corp.,*
    2012 WL 6024572 (N.D.N.Y. Dec. 4, 2012)..........................................................22

*Fleisher v. Phoenix Life Ins. Co.,*
    2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)........................................................13

*Goldberger v. Integrated Res., Inc.,*
    209 F.3d 43 (2d Cir. 2000)...............................................................................passim

*In Re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.,*
    2006 WL 3378705 (S.D.N.Y. Nov. 16, 2009) *aff'd*, 272 Fed. Appx. 9 (2d Cir. 2008)............13

*In re Arakis Energy Corp. Sec. Litig.,*
    2001 WL  1590512 (E.D.N.Y. Oct. 31, 2001).........................................................21

*In re Bisys Sec. Litig.,*
   2007 WL 2049726 (S.D.N.Y.  July 16, 2007) ................................................. 10, 13

*In Re Comverse Tech., Inc. Sec. Litig.,*
   2010 WL 2653354 (E.D.N.Y. 2010) ..............................................................13, 14

*In re Dreyfus Aggressive Growth Mut. Fund Litig.,*
   2001 WL 709262 (S.D.NY. June 22, 2001) ......................................................... 16

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ........................................................ 20

*In re Global Crossing Sec. & ERISA Litig.,*
   225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................... 17

*In re Hi–Crush Partners L.P. Sec. Litig.,*
   2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...................................................... 14

*In re Lloyd's Am. Trust Fund Litig.,*
   2002 WL 31663577 (S.D.N.Y.  Nov. 26, 2002) ................................................... 10

*In re Marsh ERISA Litig.,*
   265 F.R.D. 128 (S.D.N.Y. 2010). ..................................................................... 20

*In re Med. X-Ray Film Antitrust Litig.,*
   1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ......................................................... 17

*In re Merrill Lynch & Co., Inc. Res. Reports Sec. Litig.,*
   2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ......................................................... 14

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
   187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................. 12, 13

*In re Polaroid ERISA Litig.,*
   2007 WL 2116398 (S.D.N.Y. July 19, 2007) ...................................................... 22

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,*
   985 F. Supp. 410 (S.D.N.Y. 1997) .............................................................. 12, 18

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,*
   724 F. Supp. 160 (S.D.N.Y. 1989) .................................................................... 12

*In re Visa Check,*
   297 F. Supp. 2d 503 (E.D.N.Y. 2003) ............................................................... 21

*In re Vitamins Antitrust Litig.,*
   2001  U.S.  Dist. LEXIS 25067 (D.D.C.  July 16, 2001) ........................................ 21

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005).......................................................... 10, 13, 20

*Johnson v. City of New York*,
   2010 WL 5818290 (E.D.N.Y. Dec. 13, 2010) ...................................................... 10

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
   487 F.2d 161 (3d Cir. 1973)......................................................................... 12

*Maley v. Del. Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................20

*Malchman v. Davis*,
   761 F.2d 893 (2d Cir. 1985)......................................................................... 13

*Marsh & McLennan*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................... 15, 18, 20

*McDaniel v. County of Schenectady*,
   595 F.3d 411 (2d Cir. 2010)....................................................................... 10-11

*Missouri v. Jenkins*,
   491 U.S. 274 (1989)................................................................................. 12

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y.2012)............................................................. 13

*Olsen v. County of Nassau*,
   2010 WL 376642 (E.D.N.Y. Jan. 26, 2010) ..................................................... 14

*Savoie v. Merchs. Bank*,
   166 F.3d 456 (2d Cir. 1999) ........................................................................ 9

*Simmons v. NY. City Transit Auth.*,
   575 F.3d 170 (2d Cir. 2009)........................................................................ 14

*Viafara v. MCIZ Corp.*,
   2014 WL 1777438 (S.D.N.Y. May 1, 2014) ..................................................... 21

*Wal-Mart Stores, Inc. v. Visa USA., Inc.*,
   396 F.3d 96 (2d Cir. 2005)...................................................................... 9-10, 12

*Willix v. Healthfirst, Inc.*,
   2011 WL 754862 (E.D.N.Y Feb. 18, 2011)....................................................... 17

*Zeltser v. Merrill Lynch & Co., Inc.*,
   2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014)............................................................................ 17

Statutes

Section 524 of the Bankruptcy Code ........................................................................................ 1, 4

Rules

Fed. R. Civ. P. 23 .......................................................................................................................... 4, 13

Fed. R. Civ. P. 30(b)(6).............................................................................................................. 5, 16

## PRELIMINARY STATEMENT

Boies Schiller Flexner LLP and Charles Juntikka & Associates LLP (collectively, "Class Counsel") seek an award of $3,500,000 in attorneys' fees and expenses reasonably incurred in connection with an agreement reached with Capital One Bank (USA), N.A., to settle the above-captioned action (the "Settlement"). The Bankruptcy Court preliminarily approved the Settlement by order dated April 25, 2019. Class Counsel's efforts in connection with the Settlement conferred substantial benefits on the Settlement Class[1] warranting an award of the reasonable fees and expenses sought herein. Plaintiff requests an award of fees that represents 33% percent of the monetary value of the settlement and 1.5 times Class Counsel's lodestar.

In this class action, Plaintiff has alleged that Defendant violated the discharge injunction found in Section 524 of the Bankruptcy Code by declining, as a policy, to update the credit furnishing on certain consumer debts that were sold to third parties to reflect that those debts were discharged in bankruptcy after such sales. Defendant denies the allegations in the Complaint and Amended Complaint and denies that its conduct violated the discharge injunction. Following substantial motion practice and discovery, Class Counsel negotiated the Settlement Agreement with Defendant's counsel.[2] If approved, the Settlement would resolve the claims against Defendant in this action.

Pursuant to the Settlement Agreement, as described further below, Defendant has agreed to fund a $10.5 million Settlement Fund, subject to Court approval. Based on its records, Capital

---

[1] By separate motion filed contemporaneously herewith, Plaintiff seeks final approval of the Settlement preliminarily approved by the Bankruptcy Court on April 25, 2019.

[2] Unless otherwise defined, all capitalized terms have the same meaning as set forth in the Settlement Agreement.

One has identified over six hundred ninety five thousand Class Members.  Prior to entering into the Settlement, Capital One created a Refund Program to reimburse consumers for payments submitted to Capital One on Affected Accounts post-discharge.  To date, through this Refund Program, Capital One has reimbursed three hundred and eighty-six (386) Class Members in the aggregate amount of $210,092.04 for payments submitted to Capital One on Affected Accounts post-discharge.  Under the terms of the Settlement Agreement, these payments are credited against the Settlement Fund.  Additionally, those Class Members who submitted payments to Capital One on an Affected Account post-discharge and have not been compensated fully for those payments through the Refund Program may submit a claim for reimbursement.  The remaining settlement monies will be distributed to the Class on a claims-made basis.

Based on the aggregate amount of the reimbursement payments made to date and the reimbursement and distribution claims submitted to date, it is estimated that the distribution claim payments will likely be over $500 per Class Member, depending on the number of additional reimbursement claims and distribution claims that are verified.  Thus, the distribution payments in this action will be comparable to those in two other substantively identical actions recently settled in this district, *Haynes v. Chase Bank USA, N.A. (In re Haynes)*, No. 18-cv-03307-VB, and *Echevarria v. Bank of America Corp., et al. (In re Echevarria)*, No. 7:17-cv-08026-VB.  Any residual monies will be distributed through a *cy pres* program.  Notably, no settlement monies will revert to Capital One.

As a part of the Agreement, Capital One also represents and warrants that since December 2015, it has asked the Credit Reporting Agencies to delete Tradelines of sold debt, including for the Affected Accounts it had identified at that time, and has confirmed that these deletions have been regularly occurring.  Capital One further represents and warrants that, absent specified

exceptions (*e.g.*, a Class Member's request), it will not request that the Credit Reporting Agencies reinstate those Tradelines.  In addition, Capital One represents and warrants that, absent any change in federal or state law or contrary direction or expectation from any government regulator, during the period set forth in the Agreement, Capital One will, after the sale of charged off debt relating to a Credit Card Account, request that the Credit Reporting Agencies delete or suppress the Capital One Tradeline for that account after information about the sale is furnished.

As such, the Settlement offers substantial relief to the Settlement Class, as well as future consumers, while also taking into account the substantial risks inherent in proceeding with litigation of this nature.

In addition, this Settlement is comparable to the settlements this district court recently approved in *Haynes*, Dkt. 19, and *Echevarria*, Dkt. 23.  In *Haynes*, where there were over one million class members, Chase agreed to fund an $11.5 million settlement fund and pay Class Counsel up to $3.75 million in fees and expenses.  *Haynes*, Dkt. 9-1.  In *Echevarria*, where there were over 400,000 class members, Bank of America agreed to fund a $5.5 million settlement fund and pay Class Counsel up to $1 million in fees and expenses.  *Echevarria* at Dkt. 12-1.  Class Counsel exercised the right to seek approval for up to an additional $500,000 in fees and expenses, to be paid from the settlement fund.  *Id*. at Dkt. 14-16.  Chase and Bank of America also agreed to substantially identical representations and warranties to those Capital One agrees to here.  *Id*. at *Haynes*, Dkt. 9-1; *Echevarria*, Dkt. 12-1.

Class Counsel took this case on a contingency fee basis with no guarantee of success and have received no payments for the considerable time and money they have expended in the over four years that this litigation has been pending.  For all of these reasons, Class Counsel

respectfully request an award of the fees and expenses detailed in this application.   *See* Fed. R. Civ. P. 23(e).

## FACTUAL AND PROCEDURAL BACKGROUND

In the Amended Complaint, Plaintiff alleges that Capital One had a policy of declining to update its credit furnishing on sold credit-card debt subsequently discharged in a Chapter 7 bankruptcy.  Plaintiff alleges that Capital One's failure to update its credit furnishing to reflect Chapter 7 bankruptcy discharges pressured consumers to repay discharged debt in order to have the negative information removed from his or her credit report.  Am. Compl. ¶¶ 7-14.  Plaintiff alleges that Capital One's systematic refusal to update its credit furnishing violated the discharge injunction set forth in § 524 of the Bankruptcy Code.  Capital One denies these allegations and denies that its conduct violated the discharge injunction.  The Settlement Agreement that Plaintiff now submits for final approval provides excellent relief to the Settlement Class concerning these claims, following several years of vigorously contested litigation.

On January 31, 2014, Plaintiff Orrin Anderson filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of New York.  *In re Orrin S. Anderson*, No. 14-22147 (RDD).  The Bankruptcy Court entered a discharge order on May 6, 2014.  On or about June 9, 2015, Mr. Anderson moved to reopen his bankruptcy for the purpose of challenging Capital One's conduct, and the Bankruptcy Court granted his motion on July 6, 2015.

On July 31, 2015, Plaintiff Orrin Anderson, individually and on behalf of all others similarly situated, filed a complaint against Capital One Bank, N.A. in the Bankruptcy Court (the "Complaint").  *Anderson v. Capital One Bank, N.A.,* Adv. Proc. No. 15-08342 (RDD), Dkt. No. 1.  The parties subsequently engaged in extensive motion practice.

On September 18, 2015, Capital One moved to dismiss the Complaint and simultaneously moved to transfer the case.  Dkt. Nos. 8, 12.  Following full briefing and oral argument, the Bankruptcy Court denied the motions.  *See* Dkt. No. 42.  Plaintiff filed its Amended Complaint on April 1, 2016 and Capital One answered on April 15, 2016.  Capital One again moved to dismiss, this time the Amended Complaint, on August 1, 2018.  The parties settled before a decision on the motion, which was fully briefed.

In the course of the litigation, the parties served significant written discovery, including requests for production of documents, interrogatories, and requests for admission.  *See* Declaration of Adam R. Shaw in Support of Motion for Attorneys' Fees, Expenses and Incentive Award Payment ("Shaw Decl.")  at ¶ 3.  In response to requests for production served by Class Counsel, Capital One made ten document productions, totaling just under 300,000 pages of documents, which Class Counsel analyzed and utilized in the course of the litigation.  *Id*.  Class Counsel also deposed two corporate representatives of Capital One pursuant to Fed. R. Civ. P. 30(b)(6).  *Id*.  In addition, Class Counsel have issued third party subpoenas in the course of the litigation.  *Id*.

Moreover, the parties engaged in serious and informed negotiations in an effort to reach an equitable resolution of the litigation.  The parties had numerous settlement discussions and mediated the dispute with an experienced and well-respected mediator from Pilgrim Mediation Group, Jonathan Lerner.  *Id*. at ¶ 5.

Based upon their discovery, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, and after engaging in extensive arm's length negotiations, the parties reached agreement on the Settlement.  The Settlement Agreement both provides significant benefits to Class Members and takes into account the substantial risks inherent in proceeding with litigation of this nature.  Plaintiff had two objectives in filing this action – to remedy the alleged

violation of the discharge injunction by having Capital One update its credit furnishing and to compensate putative Class Members who were harmed by Capital One's actions.  As described further below, the Settlement Agreement achieves both objectives and further safeguards the credit reports of future consumers.  Capital One has addressed the credit furnishing with respect to Class Members' Affected Accounts and, under the terms of the Settlement, if Capital One sells debt, it has represented and warranted that it will address Tradelines related to those sales as set forth in the Settlement Agreement.  Moreover, the Settlement provides reimbursement to Class Members who made post-discharge payments on their sold Capital One debts, and further allows Settlement Class Members to make claims from a $10.5 million Settlement Fund.

On April 8, 2019, Plaintiff moved for preliminary approval of the Settlement in the Bankruptcy Court.  *Anderson v. Capital One Bank (USA), N.A.* Adv. Proc. No. 15-08342 (RDD), Dkt. No. 93-1.  Following a hearing, on April 25, 2019, the Bankruptcy Court issued an order preliminarily approving the settlement and directing that notice be issued.  *Anderson v. Capital One Bank (USA), N.A.* Adv. Proc. No. 15-08342 (RDD), Dkt. No. 95.  In its preliminary approval order, the Bankruptcy Court also conditionally certified the Class, for settlement purposes only, and appointed Orrin Anderson as Class Representative and the law firms Boies Schiller Flexner LLP and Charles Juntikka & Associates LLP as Class Counsel.  *See id*.

On May 1, 2019, the parties jointly moved to withdraw the reference so that this Court could consider final approval of the settlement.  *Id*. at Dkt. No. 96.  On June 12, 2019, this Court granted the motion. Dkt. No. 98.

## I.    The Terms of the Proposed Settlement.

Under the Settlement Agreement, the Class is defined as the collective group of those individuals (i) who maintained a Credit Card Account with Capital One; (ii) whose account Capital

One charged off and then sold to a Debt Buyer on or after January 1, 2008; and (iii) who post-sale sought and obtained a discharge of the debt as a result of his/her bankruptcy under Chapter 7 of the Bankruptcy Code, through and including March 22, 2016.  Agreement, § 1.14.  Based on its records, Capital One has identified over six hundred ninety five thousand Class Members.  Declaration of Sydney Gustafson in Support of Final Settlement Approval ("Gustafson Decl.") at ¶ 11.

### A.  Monetary Relief.

The Settlement Agreement provides significant relief to the Class.  With respect to monetary relief, the Settlement Agreement provides that Capital One will fund a qualified Settlement Fund of $10.5 million.  Prior to entering into the Settlement, Capital One created a Refund Program to reimburse consumers for payments submitted to Capital One on Affected Accounts post-discharge.  To date, through this Refund Program, Capital One has reimbursed three hundred and eighty-six (386) Class Members in the aggregate amount of $210,092.04 for payments submitted to Capital One on Affected Accounts post-discharge.  Under the terms of the Settlement Agreement, these payments are credited against the Settlement Fund.  Additionally, those Class Members who submitted payments to Capital One on an Affected Account post-discharge and have not been compensated fully for those payments through the Refund Program may submit a claim for reimbursement.  Agreement, § 5.2.2.  The remaining funds in the Settlement Fund shall be disbursed primarily to Participating Claimants who submit a Qualifying Claim Form, as described more fully in the Agreement.  *Id*. at § 5.2.3.  The Class Representative may also apply to receive, subject to court approval, an Incentive Award of up to $5,000 from the Settlement Fund. *Id*. at § 15.6.  Any residual monies will be distributed through a *cy pres* program.  *Id*. at § 5.5.

There shall be no reverter of any part of the Settlement Fund to Capital One after the Effective Date. *Id*. at § 3.3.1.

### B.   Non-Monetary Relief

In addition, as a direct result of the Action, Capital One has requested that the Credit Reporting Agencies delete the Tradelines associated with Class Members' Affected Accounts.  *Id*. at § 3.2.1.  Capital One further represents and warrants as a part of the Settlement that, absent specified exceptions (*e.g.*, a Class Member's request), Capital One will not ask the Credit Reporting Agencies to reinstate these Tradelines.  *Id*. at §§ 3.2.2-3.2.3.  Capital One also represents and warrants that, absent any change in federal or state law or contrary direction or expectation from any  government regulator, during the period set forth in the Agreement Capital One will, after the sale of charged off debt relating to a Credit Card Account, request that the Credit Reporting Agencies delete or suppress the Capital One Tradeline for that account after information about the sale is furnished.  *Id*. at § 3.2.5.[3]  Thus, the Settlement addresses the core complaint of Plaintiff and the Class and provides relief to them and to future consumers.

### C.   Settlement Administration Costs and Attorneys' Fees and Expenses.

Under the Agreement, costs including those associated with Notice, Claims, and the administration of the Settlement shall be invoiced by the Settlement Administrator and paid from the Settlement Fund.  § 3.3.2.  The Settlement Administrator has now detailed the approximate cost to date to implement the Notice Plan and handle the administration of claims and Settlement Class Member support for this Settlement Program, which totals $555,119.  Gustafson Decl. at ¶ 22.

---

[3] Section 3.2.6 in the Settlement Agreement addresses Capital One's obligations under the Agreement if federal or state law should change to require it to furnish on such debt.  *Id*.

In addition, under the Agreement, Class Counsel may seek preliminary approval from the Bankruptcy Court and final approval from the District Court for an award of Attorneys' Fees and Expenses in the Action, which shall be paid from the Settlement Fund.  *Id.* at § 15.  Pursuant to the terms of the Agreement, Class Counsel now seeks an award of $3,500,000 in Fees and Expenses ($3,445,846.00 in Fees and $54,154.21 in Expenses), as well as an Incentive Award of $5,000 for the Class Representative.

## **ARGUMENT**

### I.   **The Requested Attorneys' Fees Are Reasonable and Appropriate.**

The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gernert*, 444 U.S. 472, 478 (1980).  Accordingly, counsel who represent a class and produce a benefit for the class members are entitled to be compensated for their services.

Courts traditionally have used two methods to evaluate the reasonableness of fee requests in common fund cases: (1) the percentage method, which awards attorneys' fees as a percentage of the benefit created for the class; and (2) the lodestar approach, which involves multiplying the number of hours expended by counsel by the hourly rate normally charged for similar work by attorneys of comparable skill and experience and then enhancing the resulting lodestar figure by an appropriate multiplier to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors. *Savoie v. Merchs. Bank,* 166 F.3d 456, 460 (2d Cir. 1999).  The Second Circuit has held that district courts may use either the percentage method or the lodestar method, although the trend has been toward the percentage method. *Wal-Mart Stores, Inc. v. Visa USA., Inc.,*

396 F.3d 96, 121 (2d Cir. 2005); *see also In re Bisys Sec. Litig.,* No. 04-cv-3840, 2007 WL 2049726, at *2 (S.D.N.Y. July 16, 2007).[4] Even when not used as the primary means to determine an appropriate fee, "[t]he lodestar method remains highly useful . . . as a 'cross-check' to further ensure reasonableness." *Bisys,* 2007 WL 2049726, at *2; *see also Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000).[5]

Regardless of whether a court applies the percentage method or the lodestar method, its ultimate task is to ensure that the fees awarded are "reasonable" under the circumstances. *Goldberger*, 209 F.3d at 47. The determination of "reasonableness" is within the Court's discretion. *Goldberger,* 209 F.3d at 47; *WorldCom,* 388 F. Supp. 2d at 355. The Second Circuit has instructed that, in the exercise of such discretion:

> [D]istrict courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation  . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."

*Goldberger,* 209 F.3d at 50 (citation omitted).

Moreover, the Second Circuit has recognized that "market rates, where available, are the ideal proxy for [Plaintiffs' Counsel's] compensation." *Id.* at 52. Thus, the court should "approximate the reasonable fee that a competitive market would bear." *Johnson v. City of New York,* No. 08-cv-3673, 2010 WL 5818290, at *4 (E.D.N.Y. Dec. 13, 2010) (citing

---

[4] Additionally, "the percentage approach most closely approximates the manner in which private litigants compensate their attorneys in the marketplace contingency fee model." *In re Lloyd's Am. Trust Fund Litig.,* No. 96-cv-1262, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002).

[5] "Where the lodestar fee is used as 'a mere cross-check' to the percentage method of determining reasonable attorneys' fees, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'" *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005)) (quoting *Goldberger,* 209 F.3d at 50).

*McDaniel v. County of Schenectady,* 595 F.3d 411,420 (2d Cir. 2010)); *see also McDaniel,* 595 F.3d at 422 (district court's focus should be "on mimicking a market"). For the reasons set forth below, Class Counsel submit that the requested award of fees and expenses is reasonable under both the percentage and lodestar methods, and when viewed in light of the *Goldberger* factors.

### A.   The Proposed Award to Class Counsel is Reasonable and Appropriate Under Both the Percentage and Lodestar Methods.

Class Counsel's request for an award of fees and expenses of $3,445,846 and $54,154.21, respectively, represents 33% of the value of the Settlement. This percentage is reasonable and well within the range typically approved by courts both inside and outside of this district. *See, e.g., Central States S.E. and S.W. Areas Health and Welfare Fund v. Merck–Medco Managed Care, L.L.C.,* 504 F.3d 229 (2d Cir. 2007) (affirming 30% award of a $42.5 million settlement); *City of Providence v. Aeropostale, Inc.,* No. 11 Civ. 7132(CM), 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement recovery). In addition, when the value of the non-monetary relief is considered, the requested fee award becomes an even smaller percentage of the total recovery in this case, making it clear just how conservative Class Counsel's request is.

Indeed, in addition to obtaining monetary relief for Class Members, Class Counsel have also obtained a Settlement in which Capital One has represented and warranted that it has asked the Credit Reporting Agencies to delete Tradelines of sold debt and has confirmed that these deletions have been regularly occurring. In addition, Capital One represents and warrants that, during the period set forth in the Agreement, it will, after the sale of charged off debt, request that the Credit Reporting Agencies delete or suppress the Capital One Tradeline for that account. As such, the Settlement offers substantial non-monetary relief to the class, as well, which increases

the total value of the Settlement against which Class Counsel's request for fees should be evaluated.  Although a precise dollar value cannot be placed on the non-monetary aspect of the Settlement, it is surely of significant value and thus further reduces the percentage of the Settlement represented by Class Counsel's fees.

Application of the lodestar method confirms the reasonableness of Class Counsel's request.  The lodestar, or the presumptively reasonable fee, is comprised of the number of hours devoted by counsel multiplied by the normal, non-contingent hourly billing rate of counsel. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182, 190 (2d Cir. 2008); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 985 F. Supp. 410, 414 (S.D.N.Y. 1997).  Courts then adjust that lodestar figure (typically by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the results obtained, and the quality of the attorneys' work.  *See, e.g., Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167-69 (3d Cir. 1973).

Class Counsel collectively expended more than 4,153.15 hours of professional time in connection with this class action on a fully contingent fee basis.  *See* Shaw Decl. at ¶ 14; Juntikka Decl. at ¶ 2.  Class Counsel's total lodestar, derived by multiplying these hours by each firm's current hourly rates for its attorney's amounts to $2,276,058.00.[6]  *See* Shaw Decl. at ¶ 15; Juntikka Decl. at ¶ 3.  Thus, Class Counsel's request of a fee award of $3,445,846 is equal to 1.5 times its lodestar.  Given that courts frequently award fees equal to a multiple of Plaintiffs' Counsel's lodestar in complex class actions, the fee Class Counsel requests here is clearly reasonable.  *See, e.g., Wal-Mart Stores,* 396 F.3d at 123 (multiplier of 3.5 times lodestar of

---

[6] The Supreme Court has approved the use of current hourly rates to compensate for inflation and loss of use of funds.  *Missouri v. Jenkins,* 491 U.S. 274, 284 (1989). *See also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163-64 (S.D.N.Y. 1989) (citing cases); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 n.25 (S.D.N.Y. 1998).

$62,940,045.84 held reasonable); *Bisys,* 2007 WL 2049726, at *3 ("The reasonableness of the 30% [fee] is also confirmed by the resultant lodestar multiplier of 2.99 . . . . Such a multiplier falls well within the parameters set in this district and elsewhere.") (citations omitted); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *18 ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar in this Circuit") (citing *Morris v. Affinity Health Plan, Inc.,* 859 F. Supp. 2d 611, 623–24 (S.D.N.Y.2012)); *In re Comverse Tech., Inc. Sec. Litig.,* 2010 WL 2653354, at *5 (E.D.N.Y. 2010) (awarding 2.78 times lodestar, noting that "[w]here … counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.,* No. 03-md-1529, 2006 WL 3378705, at *2-3 (S.D.N.Y. Nov. 16, 2009), *aff'd,* 272 Fed. Appx. 9 (2d Cir. 2008) (multiplier of 2.89 times lodestar of $33,686,468); *WorldCom,* 388 F. Supp. 2d at 354 (awarding multiplier of 4 times lodestar of $83,183,238.70); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding multiplier of 3.97 times lodestar of $36,191,751, noting that multipliers between 3 and 4.5 are common).

In addition, Capital One's non-opposition to this request signals its reasonableness.  Fed. R. Civ. P. 23, 2003 Advisory Committee Notes ("The agreement by a settling party not to oppose a fee application up to a certain amount, for example, is worthy of consideration . . ."); *Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985) ("[W]here ... the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged.").

Additionally, the hourly rates used in calculating Class Counsel's lodestar are reasonable. Pursuant to the "forum rule," reasonable hourly rates are those normally charged for similar work

by attorneys of comparable skill and experience in the district where the court sits.  *Simmons v. NY.  City Transit Auth.,* 575 F.3d 170, 175-76 (2d Cir. 2009); *Arbor Hill,* 522 F.3d at 190-91; *Olsen v. County of Nassau,* No. 05-cv-3623, 2010 WL 376642, at *3 (E.D.N.Y. Jan. 26, 2010). Class Counsel's  hourly rates range from $330 to $990 for attorneys.  *See* Shaw Decl. at ¶ 16. These rates are in line with those charged by firms practicing in New York City on both sides of the caption in complex class actions, and within the hourly rates that have been applied under the lodestar method in other recent cases.  Indeed, in the *Echevarria* and *Haynes* actions, this Court recently approved Class Counsel's fees using these same hourly rates.   *See also, e.g., National Law Journal* samplings of law firm billing rates in 2017 (listing a number of law firms in New York City and other major metropolitan areas with billing rates comparable to or higher than Class Counsel's)[7]; *Fleisher*, WL 10847814 at *18 & n.15 (approving of Class Counsel's rates and citing the NLJ 2012 rate survey, stating "The National Law Journal survey for 2012 shows that partners at New York firms charge between $330 to $1200 and associates range between $215 to $760."); *In re Hi–Crush Partners L.P. Sec. Litig.,* No. 12 Civ. 8557(CM), 2014 WL 7323417, at *14 (S.D.N.Y. Dec. 19, 2014) ("The rates billed by Lead Counsel (ranging from $425 to $825 per hour) for attorneys, are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude."); *Comverse Tech.,* 2010 WL 2653354, at *4 (hourly rates from $125 to $880 were "not extraordinary for top New York law firms"); *In re Merrill Lynch & Co., Inc. Res. Reports Sec. Litig.,* No. 02-md-1484, 2007 WL 313474, at *22 (S.D.N.Y. Feb. 1, 2007) (hourly rates of $650-$850 for partners  and $515 for senior associate were "not inordinate for top-caliber New York law firms").

---

[7] Available at https://www.law.com/2017/10/03/read-this-before-you-set-your-2018-billing-rates/ (last visited on Aug. 27, 2019).

**B.**      **The Proposed Award to Class Counsel is Reasonable Under the** *Goldberger* **Criteria.**

As noted above, the Second Circuit has stated that whether the Court uses the percentage method or the lodestar approach, it should continue to consider the following traditional criteria: (1) the time and labor expended by counsel; (2) the risks of the litigation; (3) the magnitude and complexity of the litigation; (4) the requested fee in relation to the settlement; (5) the quality of representation; and (6) public policy considerations.  *Goldberger,* 209 F.3d at 50.  "In applying these criteria, a Court essentially makes . . . a qualitative assessment of a fair legal fee under all the circumstances of the case."  *Marsh & McLennan,* 2009 WL 5178546, at *15 (S.D.N.Y. Dec. 23, 2009) (citation and internal quotation omitted). An analysis of these factors further demonstrates that Class Counsel's fee request is reasonable.

**1.**      **The Time and Labor Expended By Class Counsel.**

The many hours expended by Class Counsel, which resulted in the highly favorable Settlement, are plainly reasonable in view of the work performed in this complex litigation. With respect to discovery, Class Counsel conducted a thorough pre-suit investigation and evaluation of the relevant claims and defenses.  Shaw Decl. at ¶ 3.  Moreover, they have briefed a number of contested issues to the Bankruptcy Court, including Defendant's motion to dismiss and motion to transfer venue.  Class counsel have also conducted significant discovery in the course of the litigation, including serving requests for production and interrogatories on Capital One.  *Id.*   In response to Plaintiff's document requests, Capital One produced almost 300,000 pages of documents, which Class Counsel have analyzed.  *Id.*  Class Counsel also deposed two

corporate representatives of Capital One pursuant to Fed. R. Civ. P. 30(b)(6), and sought third party discovery. *Id.*

In addition, the terms of the Settlement Agreement were negotiated through extensive meetings and discussions over the course of months. *See* Shaw Decl. at ¶ 4. These negotiations included face-to-face sessions as well as numerous telephone and email discussions. Moreover, the parties' face-to-face negotiations took place during mediation sessions, and follow up communications, with an experienced and highly regarded mediator. *Id.* at ¶ 5.

The significant time and effort devoted to this case by Class Counsel, and their commitment to the efficient management of the litigation, support approval of the requested award.

### 2.  The Risks of the Litigation.

An evaluation of the risks undertaken by Class Counsel in prosecuting this action also supports the reasonableness of their fee request. The Second Circuit has recognized that "despite the most vigorous and competent of efforts, success is never guaranteed." *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 471 (2d Cir. 1974). "Contingency risk is the principal, though not exclusive factor courts should consider in their determination of attorneys fees." *In re Dreyfus Aggressive Growth Mut. Fund Litig.,* No. 98 CV 4318 HB, 2001 WL 709262, at *6 (S.D.NY. June 22, 2001). "It is well-established that litigation risk must be measured as of when the case is filed," not when the fee application is adjudicated. *Goldberger,* 209 F.3d at 55.

With respect to the merits of the action, Capital One continues to deny liability and, absent settlement, it would no doubt continue to vigorously oppose Plaintiff's action, as it has done every step of the way to date. As such, continued litigation presents the likelihood of significantly increased costs, with no guarantee for recovery, let alone a recovery greater than that which the

Settlement provides.  *See, e.g., Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 WL 754862, at *4 (E.D.N.Y Feb. 18, 2011) ("Litigation inherently involves risks.") (citation omitted); *Banyai v. Mazur*, No. 00 CIV 9806 SHS, 2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007) ("[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."); *Zeltser v. Merrill Lynch & Co., Inc.*, 2014 WL 4816134, at *6 (S.D.N.Y. Sept. 23, 2014).

Moreover, Capital One would no doubt vigorously oppose class certification.  At the motion to dismiss stage in several related actions, the defendants moved to strike the class allegations, arguing, among other things, that the bankruptcy court lacked jurisdiction over a nationwide class action of this type.  *See, e.g., Haynes v. Chase Bank USA, N.A.*, Adv. Proc. No. 13-08370 (RDD), Dkt. No. 63 at 10-14.  While the Bankruptcy Court denied these motions to strike the class allegations, Capital One would no doubt raise similar challenges at the class certification stage and potentially pursue appeals concerning class certification.  Moreover, certified classes are subject to modification based on further developments in the litigation.  As such, additional challenges to proceeding on a class-wide basis present a risk to the class and its potential recovery.  *See, e.g., In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, at *5 (E.D.N.Y. Aug. 7, 1998); *see also In re Global Crossing Sec. & ERISA Litig*., 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (a settlement that is reached prior to the risks of class certification, summary judgment, and trial, is evaluated more leniently in light of the risks it avoids).

It is also important that Class Counsel undertook this case on a wholly contingent fee basis, knowing the litigation could last for years and would require the expenditure of thousands of attorney hours, as well as thousands of dollars in expenses, with no guarantee of compensation.

Prior to the filing of this case, Class Counsel undertook the time and effort to review literally thousands of credit reports of discharged debtors in their pre-litigation investigation to determine whether the alleged errors in the credit report were sporadic and random or whether they were the result of a policy on the part of Capital One. "In numerous class actions . . . plaintiffs' counsel have expended thousands of hours and advanced significant out-of-pocket expenses and received no remuneration whatsoever." *Marsh & McLennan,* 2009 WL 5178546, at *18 (citing examples of cases dismissed). While Class Counsel committed significant resources to the vigorous prosecution of this litigation, Class Counsel has not yet received any compensation. "Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award." *Prudential,* 985 F. Supp. at 417.

Despite all of the risks assumed by Class Counsel, only a modest premium is being sought to compensate them for those risks. This request is inherently reasonable when considered in light of the risks undertaken.

### 3.     The Magnitude and Complexity of the Litigation.

The requested fee award is also reasonable in light of the magnitude and complexity of the litigation. The procedural history above demonstrates that this litigation is, by its nature, complex. Moreover, it has already gone on for more than four years, at significant expense to the parties. If the Settlement is not approved, further litigation would resume, which would be yet more costly, complex and time-consuming. This litigation would likely include class certification proceedings, further fact discovery, including depositions, interrogatories and requests for admission, and more voluminous document discovery, expert discovery, dispositive motion practice and trial. In addition, post-judgment appeals are also possible. This litigation has been

and would continue to be complex, costly and time-consuming and it would require significant judicial oversight.

### 4.    The Requested Fee in Relation to the Settlement.

In *Costco*, the court held that "the fact that the requested fee is comparable to fees that courts have found reasonable . . . weighs in favor of the fee's reasonableness." 705 F. Supp. 231, 244 (E.D.N.Y. 2010).  As discussed above, the proposed award represents approximately 33% of the monetary value of the Settlement.  This amount is well within the range of fees awarded by courts in this Circuit in similarly-sized class actions *(see supra* pp. 15-16).

### 5.    The Quality of the Representation.

The quality of the representation and the standing of Class Counsel also support the reasonableness of the requested fee.  "[P]rosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. United States,* 658 F. Supp. 1126, 1137 (D.S.C. 1987).  The Bankruptcy Court preliminarily appointed Boies Schiller Flexner LLP and Charles Juntikka & Associates LLP Class Counsel based on their qualifications and experience and work on behalf the proposed Settlement Class.  *See  Anderson v. Capital One Bank, N.A.,* Adv. Proc. No. 15-08342 (RDD), Dkt No. 95 at 6.  Class Counsel has experience in both complex class action litigation and bankruptcy law and have efficiently prosecuted this action on behalf of the proposed Class.  Shaw Decl. at ¶¶ 7-13.

The high quality of the opposition that Class Counsel faced is a further testament to the quality of counsel's representation.  Capital One is represented by skilled and highly regarded counsel from a prestigious firm with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases.  Courts have repeatedly recognized that the caliber of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the

quality of the plaintiffs' counsel's performance, and in this case it supports approval of the requested fee. *See, e.g., Marsh & McLennan,* 2009 WL 5178546, at *19 (reasonableness of fee was supported by fact that defendants "were represented by first-rate attorneys who vigorously contested Lead Plaintiffs' claims and allegations"); *In re Marsh ERISA Litig.*, 265 F.R.D. at 128 (S.D.N.Y. 2010) ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement.").

### 6.   Public Policy Considerations.

Strong public policy supports rewarding counsel for bringing successful consumer protection litigation. *See, e.g., WorldCom,* 388 F. Supp. 2d at 359 ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-3400, 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010) (holding that if the "important public policy [of enforcing consumer protection laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley v. Del. Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("In considering an award of attorney's fees, the public policy of vigorously enforcing [consumer protection] laws must be considered."). Approval of the requested fees and expenses would be fully consistent with these important public policy considerations.

* * *

Thus, as described above, Class Counsel's requested fees are reasonable under each of the percentage of common fund, lodestar, and *Goldberger* analyses.

## II.     Class Counsel's Expenses Are Reasonable and Appropriate.

Plaintiffs' Counsel also request reimbursement of all litigation costs and expenses incurred during this litigation, which currently total $53,274.67 (BSF) plus $879.54 (Juntikka). These relatively modest expenses were reasonable and necessary in this litigation, and have been expended for the direct benefit of the Class. *See* Shaw Decl. at ¶ 17; Juntikka Decl. at ¶ 4. "Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course." *In re Arakis Energy Corp. Sec. Litig.,* 3431C, 2001 WL 1590512, at *17 n.12 (E.D.N.Y. Oct. 31,2001); *see, e.g., In re Visa Check,* 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003) (noting that it is common practice to grant expense request and awarding millions in expenses where the "lion's share of these expenses reflects the cost of experts and consultants, litigation and trial support services, document imaging and copying, deposition costs, on-line legal research, and travel expenses."); *In re Vitamins Antitrust Litig.*, No. 99-197, MDL No. 1285, 2001 U.S. Dist. LEXIS 25067, at *69 (D.D.C. July 16, 2001) ("[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of ... reasonable litigation expenses from that fund . . . . Courts have routinely awarded expenses for which counsel would normally directly bill their clients.").

## III.     The Proposed Incentive Award to the Class Representative is Reasonable and Appropriate.

Providing incentive awards to consumers who come forward to represent a class is a necessary and important component of any class action settlement. *See Viafara v. MCIZ Corp.*, No. 12 7452, 2014 WL 1777438, at *16 (S.D.N.Y. May 1, 2014) ("Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. It is important to compensate plaintiffs for the time

they spend and the risks they take.  The Court finds reasonable service awards of $12,500 to Viafara for the MCIZ Settlement and $12,500 for the JAD Settlement.") (citations omitted); *Elliot v. Leatherstocking Corp.*, No. 10-0934, 2012 WL 6024572, at *7 (N.D.N.Y. Dec. 4, 2012) ("Service awards are common in class action cases and are important to compensate a plaintiff for the time and effort expended in assisting in the prosecution of the litigation.").

Class Counsel requests that the Court approve the payment of an incentive award to Plaintiff in the amount of $5,000 in recognition of his efforts on behalf of the Class.  The requested payment is well deserved and falls well within the range of incentive awards approved in prior cases.  *In re Polaroid ERISA Litig.*, 2007 WL 2116398, at *3 (S.D.N.Y. July 19, 2007) (citing *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000 to representative plaintiffs in class actions). Moreover, the incentive award request was subject to arm's length negotiations between the parties and was adequately disclosed in advance to the Class and has not been objected to.  Plaintiff reviewed, and discussed with Class Counsel, various pleadings, discovery responses and memoranda of law.  Plaintiff also conferred with Class Counsel regarding the status of the case and the settlement negotiations, and represented well the interests of the absent class members. Shaw Decl. at ¶ 18.  Plaintiff's participation was substantial and indispensable.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the request for attorney's fees and costs and incentive award in the amounts indicated.

Respectfully submitted,

Dated:   Albany, New York
August 28, 2019

**BOIES SCHILLER FLEXNER LLP**

By:      /s/Adam R. Shaw_____
George F. Carpinello
Adam R. Shaw
Anne M. Nardacci
30 South Pearl Street
Albany, NY  12207
(518) 434-0600

**CHARLES JUNTIKKA & ASSOCIATES LLP**
Charles Juntikka
30 Vesey Street, #100
New York, NY  10007
(212) 315-3755

*Attorneys for Plaintiff Orrin S. Anderson*

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 28, 2019, I caused the foregoing document to be filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

<i>/s/Adam R. Shaw</i>_____<br>Adam R. Shaw

24